Marie-Louise BARTON, Plaintiff,

v.

The UNITED STATES DEPARTMENT OF AGRICULTURE and John R. Block, Secretary of Agriculture, Defendants.

Civ. No. 81–3264.

United States District Court, S. D. Illinois.

Sept. 18, 1981.

George M. Burditt, Chicago, Ill., W. Thomas Coghill, Jr., and Edw. S. Bott, Jr., East St. Louis, Ill., for plaintiff.

Robert A. Ertman, U. S. Dept. of Agriculture, Washington, D. C., for defendants.

ORDER

FOREMAN, Chief Judge:

This matter came before the Court when on July 8, 1981, plaintiff filed her Verified Complaint for Declaratory Relief and for Relief in the Nature of Mandamus, and her Motion for a Temporary Restraining Order

and a Preliminary Injunction. For the reasons given below, the Motion for a Temporary Restraining Order and a Preliminary Injunction is hereby DENIED.

## FINDINGS OF FACT

1. On June 17, 1981, the United States Department of Agriculture (Department) issued an Order to Dispose of Animal, which required plaintiff to dispose of a certain horse, namely a Trakehner mare called Karneval, either by removing the horse from the United States or by destroying it, by the close of business (c.o.b.), July 3, 1981.

2. The notice stated in relevant part: The above described horse, imported into the United States by Marie-Louise Barton, ... on September 17, 1980, was represented as having been in Denmark for the entire 12-month period immediately preceding entry into the United States, when the horse had in fact been in the Federal Republic of West Germany within that 12-month period.

Title 9, Code of Federal Regulations §§ 92.2(i)(1) and 92.17, issued under 21 U.S.Code 102–105, 111, 134a, 134b, 134c, 134f, prohibit the importation of horses which have been in the Federal Republic of Germany, within 12 months immediately preceding their export to the United States because of the existence of contagious equine metritis (CEM) in that country, except for certain exceptions...

Such disposal is deemed necessary because the above described animal was moved into the United States contrary to regulations administered by the Secretary for the prevention of introduction or dissemination of contagious equine metritis, a communicable disease of equidae.

(See, Exhibit A, attached to plaintiff's original complaint.)

3. On July 2, 1981, the Secretary granted an extension of time until c.o.b. July 8, 1981.

4. On July 9, 1981, the Department issued a second order requiring plaintiff to dispose of two additional horses, Tanzania and Piazza, by c.o.b. July 17, 1981.

5. On July 15, 1981, the Department issued a third order, requiring plaintiff to dispose of fifteen horses, including the three mentioned above, by c.o.b. July 24, 1981. The reasons for the order were identical to those set forth in No. 2, *supra.* (*See,* Exhibit C, attached to plaintiff's First Amended Verified Complaint for Declaratory and Injunctive Relief and for Relief in the Nature of Mandamus, filed July 28, 1981.)

6. After several continuances, a hearing was held in open court on July 28, 1981.

7. The plaintiff, Marie-Louise Barton, was the owner of the horses in question, except for one horse sold prior to the issuance of the first order.

8. The fifteen horses named in the disposal order of July 15, 1981, were imported into the United States on September 17, 1980, on behalf of plaintiff and were represented as having been in Denmark for the entire twelve month period immediately preceding entry into the United States. In fact, the horses had been in the Federal Republic of Germany some time within that twelve month period.

9. The fifteen horses named in the disposal order are Trakehner mares.

10. There was no evidence introduced which demonstrated that the horses actually were infected with contagious equine metritis.

11. Initial tests run by plaintiff's veterinarian indicated that Karneval, Tanzania and Piazza were free of contagious equine metritis.

## CONCLUSIONS OF LAW

The amended complaint of July 28, 1981, seeks in Count I judicial review under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, of the administrative decision of the Department and declaratory relief under 28 U.S.C. §§ 2201 and 2202 and in Count II a mandamus under 28 U.S.C. § 1361 compelling the Department to vacate its disposal order of July 15, 1981. In a third count, plaintiff seeks a declaratory judgment and injunction precluding any ac-

tion based on 9 C.F.R. § 92.2(i), since the section was promulgated allegedly in violation of the APA. The Motion for a Preliminary Injunction, which currently is before the Court, argues that the disposal orders issued by the Department were premised on the assumption that the horses might be infected with CEM or carriers of the disease. Since there was no evidence that the horses were infected, and preliminary examination indicated that the horses were free of the disease, plaintiff argued that destruction or deportation would be an arbitrary and capricious deprivation of property, depriving her of due process. In addition, since some of the horses were with foal or had recently foaled, and transportation could harm the young horses, she argued that this further deprived her of property without due process.

Defendants argued that whether the horses actually carried the disease was irrelevant. The Department viewed disposal of the horses as a necessary step in preserving the integrity of its CEM control program since, if the horses were allowed to remain, others would sneak horses in illegally with the expectation that courts would allow them to stay if the horses could be proved disease free. In such an influx, disease ridden horses would surely be introduced.

■ A preliminary injunction is a limited remedy intended to preserve the status quo until a full hearing can be held. *Ohio Sealy Mattress Mfg. Co. v. Dunkin,* 486 F.Supp. 1047 (N.D.Ill.1980). The Court may grant a preliminary injunction where a plaintiff has demonstrated that: (1) there is no adequate remedy at law and that irreparable harm will result; (2) the threat of harm to the plaintiff outweighs the harm to the defendant; (3) there is at least a reasonable likelihood that the plaintiff will prevail on the merits; and (4) the public interest will not be disserved by granting the injunctive relief. *Reinders Bros., Inc. v. Rain Bird Eastern Sales Corp.,* 627 F.2d 44 (7th Cir. 1980); *O'Connor v. Board of Education,* 645 F.2d 578 (7th Cir. 1981). The Seventh Circuit recognizes the likelihood of success factor as a threshold requirement. *O'Connor, supra,*

645 F.2d at 580; *Kolz v. Board of Education,* 576 F.2d 747 (7th Cir. 1978). It was clear to the Court at the hearing of July 28 that plaintiff failed to make out a case under this fourfold requirement.

■ First, the power afforded the Secretary of Agriculture to prevent livestock and poultry disease is broad. The Secretary,

whenever he deems it necessary in order to guard against the introduction or dissemination of a communicable disease of livestock or poultry, may seize, quarantine, and dispose of, in a reasonable manner, taking into consideration the nature of the disease and the necessity of such action to protect the livestock or poultry of the United States: (1) any animals which he finds are moving or are being handled or have moved or have been handled in interstate or foreign commerce contrary to any law or regulation administered by him for the prevention of the introduction or dissemination of any communicable disease of livestock or poultry . . .

21 U.S.C. § 134a(a)(1) (1981). This provision applies by its very language to the situation in the case at bar and embodies the deterrence rationale advanced by defendants. The conclusion that subsection (a) embodies deterrence by allowing the Secretary to promulgate orders for removal of animals transported in violation of laws and regulations without regard to actual affectation is buttressed by reading § 134a(a)(1) in conjunction with § 134a(a)(2) and (3) which allow the Secretary the same authority with respect to

(2) any animals which he finds are moving into the United States, or interstate, and are affected with or have been exposed to any communicable disease dangerous to livestock or poultry; and (3) any animals which he finds have moved into the United States, or interstate, and at the time of such movement were so affected or exposed.

21 U.S.C. § 134a(a)(2) and (3). If plaintiff's horses were currently infected, the Secretary could remove them under subsection (a)(3). However, the Secretary is given a

greater power under subsection (a)(1) to remove horses imported contrary to regulations, so that others will be deterred from bringing in horses illegally in the hopes that they might be allowed to remain.

The Secretary is given power "to promulgate regulations prohibiting or regulating the movement into the United States of any animals which are or have been affected with or exposed to any communicable animal disease..." 21 U.S.C. § 134c (1981). Pursuant to this statute, the Secretary issued 9 C.F.R. § 92.2(i)(1), which prohibits the importation of horses from a list of countries, including the Federal Republic of Germany, where the horse had been in any listed country within twelve months immediately preceding importation because of the existence of CEM in those countries. Once plaintiff's horses entered illegally, they were fair game for removal or disposal under 28 U.S.C. § 134a(a)(1).

However, even assuming that plaintiff would be likely to succeed on the merits, she fails other aspects of the test. The threat of harm to the public if she were allowed to keep her horses, that is the loss of the deterrent to potential violators of the CEM regulations, could result in a CEM epidemic. This clearly is not in the public interest. Also, there is an adequate remedy at law. If, as plaintiff asserts, she did not know the horses were brought in illegally, she can recover their fair market value under 28 U.S.C. § 134a(d) and (e).

Plaintiff's presentation was distinguished chiefly by its brevity and lack of real content. There was simply not enough evidence on any of the points from which plaintiff could make out a case for preliminary injunction. Since plaintiff has not demonstrated that this extraordinary remedy should be utilized here, the Motion for a Preliminary Injunction is hereby DENIED. ORDERED July 29, 1981.

After the hearing, plaintiff's attorneys informed the Court plaintiff did not wish to appeal, but instead, intended to remove the horses. Since that time, the Court has learned informally that the horses have been taken outside the United States. Ac-cordingly, the plaintiff is hereby given twenty (20) days from the date of this order to come forward and show cause why the complaint should not be dismissed as moot. If plaintiff has not so come forward within twenty days, the cause will be dismissed with prejudice.

In addition, plaintiff's Motion for Stay Pending Appeal is hereby DENIED as moot.

IT IS SO ORDERED.